**FILED**
**Apr 21, 2026**
**08:00 AM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT MURFREESBORO

| | |
|---|---|
| **KATHY GOAD,**<br>　　　　**Employee**,<br>**v.** | **Docket No. 2023-05-7741** |
| **CAPSTONE LOGISTICS, LLC,**<br>　　　　**Employer**,<br>**and** | **State File No. 73552-2023** |
| **XL INS. AMERICA, INC.,**<br>　　　　**Carrier**. | **Judge Dale Tipps** |

## EXPEDITED HEARING ORDER GRANTING BENEFITS

The Court held an Expedited Hearing on April 14, 2026, on Ms. Goad's request for additional temporary disability and medical benefits. For the reasons below, the Court holds she is likely to prevail at a final hearing that she is entitled to continuing medical treatment, including the surgery ordered by Dr. John Burleson, but not to temporary partial disability benefits.

### Claim History

Ms. Goad was working for Capstone on September 27, 2023, when a towmotor pushed a pallet into the back of her legs, causing her to fall backward and land in a sitting position on some cardboard on the pallet. She reported back pain, and Capstone sent her to an urgent care clinic that day.

The physician's assistant at the clinic prescribed an anti-inflammatory and a muscle relaxant and assigned light-duty restrictions. Ms. Goad returned to the clinic several times over the next month before she was referred to an orthopedic specialist.

Ms. Goad's first two selections from the orthopedic panel refused to see her, so instead of requesting a new panel, she selected Dr. Burleson to avoid further delay.

At her first visit in January 2024, she told him about suffering immediate sharp pain in her back when "she was hit by a towmotor" at work. Ms. Goad also reported developing some radicular symptoms in her leg. An MRI showed L4/5 grade 1 spondylolisthesis, and Dr. Burleson felt it likely that "was made worse with her accident." He continued her restrictions and suggested epidural steroid injections. When those were unsuccessful, Dr. Burleson recommended anterior lumbar interbody fusion surgery, as she had "a disc bulge that is placing pressure on her nerves causing . . . significant radiculopathy."

Capstone then sent Dr. Burleson two medical questionnaires. The first asked whether Ms. Goad's spine problems were more than 50% related to her work accident. Dr. Burleson selected "no" and explained that some of her symptoms, such as her back pain, were mainly related to her accident. But he attributed her need for fusion as greater than 75% related to her "chronic, degenerative condition." He also answered "no" to whether a lumbar fusion was more than 50% related to the work injury.

Dr. Burleson's later notes show that surgery was not approved. He continued, however, to recommend the operation over the next few months. In January 2025, Dr. Burleson explained, "I do believe she had a work injury which made her chronic back condition symptomatic." Following a functional capacity evaluation, he determined she reached maximum medical improvement on March 11 and assigned a permanent impairment rating.

Capstone sent another medical questionnaire to Dr. Burleson in June. Asked whether he still believed Ms. Goad's need for lumbar fusion was not more than 50% related to her work accident, he responded, "yes." He also indicated that none of her future treatment was more than 50% related to the work injury.

Ms. Goad began seeing Dr. Melvin Law, an unauthorized orthopedic surgeon. The only treatment record from Dr. Law entered into evidence is an office note of July 23, 2025. He diagnosed spondylolisthesis at L4-5 with significant moderate to severe lateral recess stenosis and recommended anterior lumbar interbody fusion.

In response to a letter from Ms. Goad's attorney, Dr. Law wrote that because Ms. Goad denied having any back problems or pain before her work accident, she likely suffered an annular tear. This made her spondylolisthesis unstable and caused her to become symptomatic. Dr. Law also executed a Form C-32 Standard Form Medical Report in which he described the mechanism of injury as a "fall after being

2

hit by a tow motor at work." He believed her work accident was primarily responsible for both advancing her pre-existing condition and the present need for treatment of that condition.

Dr. Burleson testified via deposition that a video of the accident did not change his opinion. His initial impression of Ms. Goad's injury was based on her description of being hit by a towmotor. After reviewing the video, the incident was less violent than he originally thought. However, it did not materially change his opinion, and he reiterated that Ms. Goad's need for fusion surgery was not more than 50% related to her work injury. He explained, "[A]fter seeing the mechanism [of injury] again, I don't think there was enough in that injury to worsen her spine to cause the symptoms that she's having." Dr. Burleson also thought Dr. Law's suggestion of an annular tear was speculation and that the MRI did not indicate one.

On cross-examination, Dr. Burleson agreed that Ms. Goad reported her symptoms had begun immediately after the accident. He also said that her nerve roots were not causing symptoms before the accident and that Ms. Goad would not need surgery at this time if she were asymptomatic.

Dr. Burleson was asked about his January 14, 2025 note, where he wrote:

I believe the majority of her need for surgery is due to her chronic low back condition and not her work injury. I do think the work injury is greater than 50% responsible for the symptoms she experienced after the injury and therefore the immediate treatment. However, I do not believe that the need for surgery is mainly from this work injury.

This led to the following exchange:

Q. Again, asymptomatic before the accident, right?
A. Yes, sir.
Q. Immediately became symptomatic, correct?
A. Correct.
Q. Symptomatic because of the aggravation of a pre-existing condition?
A. I think that's fair to say.
Q. And it was only the accident that aggravated the pre-existing condition, right?
A. I believe that's correct.

Finally, Dr. Burleson was shown a notation in the clinic records that read, "Has injured her back years ago but no prior back surgery." He said that did not affect his causation opinions.

Based on Ms. Goad's Rule 72 Declaration and her testimony, she injured her back while working for another employer sometime before 2005 that caused pain in her shoulders. She sought treatment through her health insurance but received no surgery, injections, or physical therapy. Instead, she worked a period of light duty before returning to her regular duties, after which the symptoms disappeared, and she had no problems for 20 years.

Ms. Goad worked for two to three years at Capstone, packing cookies and biscuits on a production line. She could do her job with no limitations, no injuries, and no lumbar spine symptoms until the accident in September 2023.

Ms. Goad's description of the accident was inconsistent. She previously described being hit by the towmotor or being hit by the pallet the towmotor was carrying. However, she testified during the hearing that she was standing and working at a table when a pallet on the floor behind her struck her in the back of the legs, which caused her to fall backward. She was unable to catch herself, and she landed on the pallet in a seated position. As soon as she fell, Ms. Goad felt severe low back pain. Her leg pain, which she had never had before, began a few weeks later.

While receiving medical treatment, Ms. Goad continued working light duty until October 1, 2024, when Capstone could no longer accommodate her restrictions. She then began receiving full temporary disability benefits that continued until Dr. Burleson determined she had achieved maximum medical improvement. She has not been able to work anywhere since, and her condition has worsened since she last saw Dr. Burleson.

Ms. Goad requested an order for continuing medical treatment, specifically the surgery ordered by Dr. Burleson. She also asked that Dr. Law perform the operation and be designated as her authorized physician. Ms. Goad also contended that she is entitled to additional temporary total disability benefits from March 11, 2025, the date they were terminated, to the present.[1]

---

[1] She also requested payment of additional temporary partial disability benefits for the period she was working light duty. However, following the hearing, the parties notified the Court that they had reached an agreement on this issue.

Capstone countered that it furnished or paid all benefits to which Ms. Goad was entitled. Relying on Dr. Burleson, whose opinion is presumed correct, it argued that any aggravation to her underlying spine condition was not primarily caused by her work accident. Therefore, Capstone is not responsible for the recommended surgery. Further, Ms. Goad is not entitled to additional temporary disability benefits because Dr. Burleson said she had reached maximum medical recovery, and that opinion was never retracted.

## Findings of Fact and Conclusions of Law

Ms. Goad must show she is likely to prevail at a hearing on the merits. Tenn. Code Ann. § 50-6-239(c)(6) (2025); *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015).

## Causation

Regarding the surgical recommendation, the parties disagreed whether Ms. Goad's work accident was the primary cause of the aggravation of her pre-existing diagnosed spondylolisthesis. They agreed, however that the controlling law is in *Edwards v. Peoplease, LLC*, No. W2024-01034-SC-R3-WC, 2025 Tenn. Lexis 514 (Tenn. Dec. 22, 2025) (2013 Reform Act established a new standard for determining whether an aggravation is compensable).

Addressing the standard for proving an aggravation, the Supreme Court first summarized the statutory requirements for establishing compensability:

> For aggravation injuries, the claimant must show, to a reasonable degree of medical certainty, that the aggravation primarily arose out of and in the course and scope of employment. This requires the employee to demonstrate that the employment contributed more than fifty percent in causing the aggravation. Finally, the employee must establish that the aggravation of the pre-existing condition contributed more than fifty percent in causing the death, disablement, or need for medical treatment, to a reasonable degree of medical certainty. Further, the "opinion of the treating physician, selected by the employee from the employer's designated panel of physicians . . . shall be presumed correct on the issue of causation," but the employee can overcome this presumption "by a preponderance of the evidence."

5

*Edwards*, 2025 Tenn. Lexis 514 at*23-24.

The court then explained that "aggravation" means "intensification or worsening of a preexisting disease, condition or ailment, *permanent or not*, that contributes more than fifty percent in causing death, disability or *the need for medical treatment*." *Id*. at*26. (emphasis added). Ms. Goad therefore must prove she is likely to show (1) that the work accident contributed more than fifty percent in causing the aggravation, and (2) that the aggravation, which was caused by the work accident, contributed more than fifty percent to disablement or the need for medical treatment.

Capstone argued that Ms. Goad's previous back problems foreclose her claim for aggravation. It contended that the *Edwards* court focused on Ms. Edwards's lack of symptoms before her accident. Ms. Goad, on the other hand, admitted to having back pain in the past. Capstone maintained that her claim is distinguishable because *Edwards* "makes no distinction about timing of symptomology prior to the work injury or how resolution of prior symptomology before recurrence . . . affects the analysis."

Capstone may be correct that the facts in *Edwards* are different, in that Ms. Goad may have had back pain in the past. However, just because the court did not set out specific parameters does not mean that its holding is limited to workers with pristine medical histories. To the contrary, the plain language of the opinion says any *intensification* causing more than 50% of the need for treatment is a compensable aggravation. This suggests that a worsening of previous symptoms is to be included in the analysis.

Further, the evidence in this case does not establish that Ms. Goad's previous symptoms were related to or even like her current problem. The parties offered no medical records from the earlier treatment, and the only specifics were Ms. Goad's testimony that her shoulders hurt, which is a very different complaint from her current symptoms.

Capstone also contended that the accident video validates Dr. Burleson's opinion. It argued that the events in the video do not square with Ms. Goad's accident description. Further, the mechanism of injury was inconsistent with what she described to her providers.

The Court agrees that Ms. Goad's description of the accident was inconsistent with the video. Even watching the recording while she was on the stand, her

6

narration of the events was nearly incomprehensible. In short, Ms. Goad is a very poor historian, but she was generally credible. Further, the Court viewed the recording, and the video supports the main points. That is, a pallet hit the back of her legs, and she fell backwards into a seated position on it.

The problem with Capstone's reliance on Dr. Burleson's conclusion that the mechanism of injury was insufficient to cause Ms. Goad's problems is that Dr. Burleson's deposition testimony was also inconsistent. He reviewed the video after already concluding that her need for fusion surgery was not more than 50% related to her work injury. He then said it did not change his opinion and added, "I don't think there's enough in that injury to worsen her spine to cause the symptoms that she's having.[2]"

However, Dr. Burleson also acknowledged that Ms. Goad only became symptomatic after the accident because of the aggravation of a pre-existing condition. He then agreed the accident was the only cause of the aggravation, which precisely meets the requirements of *Edwards*. He did not explain how the accident could be the sole cause of the aggravation yet insufficient to cause her symptoms.

Dr. Burleson's causation opinion is presumed correct under section 50-6-102(12)(E). But how is the Court to apply the statutory presumption when his testimony was inconsistent on this question? The conflicting opinions make it difficult to credit his reservations regarding the mechanism of injury, so one approach would be to discount his testimony entirely. *Clay v. Signature Healthcare*, 2019 TN Wrk. Comp. App. Bd. LEXIS 58, at *22 (Oct. 21, 2019) (relying on the doctor's various causation opinions was problematic, as it was impossible to discern what his opinion actually was). This would leave only Dr. Law's opinion that Ms. Goad's work injury was primarily responsible for both advancing her pre-existing condition and for her present need for treatment.

On the other hand, the Court might conclude that, given the diametrical nature of his responses on this issue, Dr. Burleson simply did not understand how to apply the legal standard of causation to his understanding of Ms. Goad's symptoms. In that situation, the Court might credit only the factual parts of Dr. Burleson's testimony and not his opinion on the ultimate issue, which would support Dr. Law's opinion. Or the Court might simply assign less weight to Dr. Burleson's opinion because of its inconsistency. This would weaken his testimony to the point that the

---

[2] Dr. Burleson said several times that the accident was part of the cause of her need for treatment, just not 50%.

7

presumption of correctness is easily overcome by Dr. Law's contrary opinion.

Further, Dr. Burleson's conclusion about Ms. Goad's symptoms being caused by the work accident is supported by her own testimony. *Caskey v. Powers Pizza, LLC,* 2015 TN Wrk. Comp. App. Bd. LEXIS 37, at *9 (Oct. 7, 2015) (live testimony by a lay witness may influence the trier of fact in considering expert medical proof). As noted above, she was not a good historian, but she was a very credible witness regarding her physical condition and limitations. She did not appear to exaggerate her complaints of pain; her demeanor was consistent with one who had endured pain for some time; and her need for relief was believable. Against this backdrop, she testified that she was completely asymptomatic before the accident, when she immediately developed serious pain. Capstone offered no proof to rebut this testimony.

For these reasons, applying the *Edwards* standard to the facts of this case, the Court finds that Ms. Goad is likely to prove entitlement to the surgery offered by Dr. Burleson.

## Medical Treatment

Ms. Goad asked that Dr. Law perform the operation and be designated as her authorized physician. If an employer refuses to provide medical treatment or denies an employee's claim, it runs the risk that an employee's chosen physician will be designated the authorized physician. *Blevins v. S. Champion Tray, LP*, 2019 TN Wrk. Comp. App. Bd. LEXIS 29, at *16-17 (July 11, 2019).

In this case, Capstone did not deny Ms. Goad's claim but furnished medical panels and treatment. It later denied the fusion surgery, but it did so because the authorized doctor said her injury and need for treatment were not more than 50% caused by her work accident. Under the circumstances, the Court finds she is unlikely to prove she is entitled to a change of physicians.

## Temporary Disability

Ms. Goad requested payment of additional temporary total disability benefits from March 11, 2025, the date they were terminated, to the present.

The request for temporary total disability benefits is a misnomer, as an injured worker is eligible for those benefits only when she is completely unable to work. *Jones v. Crencor Leasing and Sales*, 2015 TN Wrk. Comp. App. Bd. LEXIS 48, at

8

*7-8 (Dec. 11, 2015). Ms. Goad was not taken off work completely during the relevant time period but may have been on light-duty restrictions for all or part of it. Thus, the appropriate question is whether she is entitled to temporary partial disability benefits. For this, she must show that her treating physician assigned temporary restrictions that Capstone either could not or would not accommodate. *Id.*

The hurdle for Ms. Goad is that temporary partial disability benefits end once the employee is able to return to work or has reached maximum medical improvement. *Hackney v. Integrity Staffing Solutions, Inc.*, 2016 TN Wrk. Comp. App. Bd. LEXIS 29, at *11 (July 22, 2016).

According to Dr. Burleson, Ms. Goad reached maximum medical recovery on March 11, 2025. Normally, this would mean she could not receive temporary disability benefits after that date. *Williams v. Saturn Corp.,* No. M2004-01215-WC-R3-CV, 2005 Tenn. LEXIS 1032, at *8 (Tenn. Workers' Comp. Panel Nov. 15, 2005). But the rule has an exception. If a maximum medical improvement determination is "premature and incorrect," temporary disability benefits may still be awarded. *Mansell v. Southeast Personnel Leasing, Inc.*, 2025 TN Wrk. Comp. App. Bd. LEXIS 9, at *11 (Mar. 12, 2025). However, an employee "still must show that he would likely prevail at trial in proving that the original [maximum medical improvement] determination was premature." *Id.*[3]

The Supreme Court Workers' Compensation Panel held that the initial maximum improvement determination was premature and incorrect when an MRI, approximately one year later, revealed the need for additional surgery. *Wise v. Murfreesboro Health Care Ctr.*, no number in original, 1994 Tenn. LEXIS 389, at *9 (Tenn. Workers' Comp. Panel Dec. 22, 1994). Similarly, the Board recently held that additional temporary benefits were proper when an employee experienced additional symptoms after reaching maximum improvement, an MRI revealed severe post-traumatic arthritis, and the doctor retracted his opinion. *Laymance v. K-VA-T Food Stores, Inc.*, 2026 TN Wrk. Comp. App. Bd. LEXIS 2, at *12 (Jan. 14, 2026).

---

[3] The Court was unable to identify any specific authority on this question as to temporary partial disability benefits. *Mansell* and the other cases cited addressed temporary total disability rather than partial. However, both partial and total disability benefits share the limitation of maximum medical improvement terminating the right to benefits. Thus, the analysis is the same, and the Court views these cases as controlling authority.

*Wise* and *Laymance* are distinguishable from this case. Unlike the employees in those cases, Ms. Goad offered no evidence that her symptoms or her underlying medical condition changed significantly after Dr. Burleson said she reached maximum medical improvement.

Instead, like the employee in *Mansell*, Ms. Goad offered no expert proof that Dr. Burleson "placed [her] at [maximum medical improvement] prematurely or that he has retracted that determination or otherwise reversed his opinion." *Mansell*, 2025 TN Wrk. Comp. App. Bd. LEXIS 9 at *11. In fact, Dr. Burleson testified, "I'm saying that, where she is now with surgeries that she [w]as offered her currently . . . that she has reached maximum medical improvement with our treatments." Like the *Mansell* court, this Court cannot find that the doctor's original determination was premature or medically incorrect without any expert medical opinion to support that conclusion. That kind of speculation is improper, as courts cannot formulate their own medical opinions. *Id.* For this reason, Ms. Goad has not yet shown she is likely to prove entitlement to temporary partial disability benefits from March 11, 2025, to the present.

**IT IS, THEREFORE, ORDERED** as follows:

1. Capstone shall provide Ms. Goad with medical treatment made reasonably necessary by her September 23, 2023 injury under Tennessee Code Annotated section 50-6-204, including the surgery recommended by Dr. Burleson, who shall remain her authorized doctor.

2. Ms. Goad's request for temporary partial disability benefits is denied at this time.

3. A status hearing will take place on **July 1, 2026, at 10:00 a.m. Central Time.** The parties must call 615-741-2112 to participate.

4. Unless an interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3).

**ENTERED April 21, 2026.**

10

**JUDGE DALE TIPPS**
**Court of Workers' Compensation Claims**


**APPENDIX**

**Exhibits:**
1. Rule 72 Declaration of Kathy Goad
2. Dr. Law's C-32 Standard Form Medical Report
3. Indexed medical records
4. Employee's additional medical records
5. Video recording of accident
6. Printouts of Ms. Goad's earning statements
7. Summary of Ms. Goad's weekly earnings and temporary partial disability payments
8. Ms. Goad's answers to first set of interrogatories and requests for production
9. Capstone's responses to first requests for production
10. Emails between counsel regarding Ms. Goad's panel selections

# CERTIFICATE OF SERVICE

I certify that a copy of this order was sent as shown on April 21, 2026.

| Name | Mail | Email | Service sent to: |
|---|---|---|---|
| R. Steven Waldron, Employee's Attorney | | X | arlenesmith@wfptnlaw.com |
| Ryan Mirian, Employer's Attorney | | X | rmirian@eraclides.com |

_____
**PENNY SHRUM, COURT CLERK**
**wc.courtclerk@tn.gov**

12



<u>Right to Appeal:</u>

If you disagree with the Court's Order, you may appeal to the Workers' Compensation Appeals Board.  To do so, you must:

1. Complete the enclosed form entitled "Notice of Appeal" and file it with the Clerk of the Court of Workers' Compensation Claims before the expiration of the deadline.
   - ➢ If the order being appealed is "expedited" (also called "interlocutory"), or if the order does not dispose of the case in its entirety, the notice of appeal *must* be filed *within seven (7) business days* of the date the order was filed.
   - ➢ If the order being appealed is a "Compensation Order," or if it resolves all issues in the case, the notice of appeal *must* be filed *within thirty (30) calendar days* of the date the Compensation Order was filed.

   When filing the Notice of Appeal, you must serve a copy on the opposing party (or attorney, if represented).

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing the Notice of Appeal.  Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service.  In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the filing fee.  You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal.  **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of your appeal.**

3. You are responsible for ensuring a complete record is presented on appeal.  If no court reporter was present at the hearing, you may request from the Court Clerk the audio recording of the hearing for a $25.00 fee.  If you choose to submit a transcript as part of your appeal, which the Appeals Board has emphasized is important for a meaningful review of the case, a licensed court reporter must prepare the transcript, and you must file it with the Court Clerk.  The Court Clerk will prepare the record for submission to the Appeals Board, and you will receive notice once it has been submitted.  For deadlines related to the filing of transcripts, statements of the evidence, and briefs on appeal, see the applicable rules on the Bureau's website at https://www.tn.gov/wcappealsboard. (Click the "Read Rules" button.)

4. After the Workers' Compensation Judge approves the record and the Court Clerk transmits it to the Appeals Board, a docketing notice will be sent to the parties.

   **If neither party timely files an appeal with the Appeals Board, the Court Order becomes enforceable.  See Tenn. Code Ann. § 50-6-239(d)(3) (expedited/interlocutory orders) and Tenn. Code Ann. § 50-6-239(c)(7) (compensation orders).**

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



# NOTICE OF APPEAL

Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury: _____**

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____    ☐ Motion Order filed on _____

☐ Compensation Order filed on_____    ☐ Other Order filed on_____

issued by Judge _____.

## Statement of the Issues on Appeal

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

_____

## Parties

**Appellant(s)** (Requesting Party): _____ ☐Employer ☐Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐Employer ☐Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____
*[Signature of appellant or attorney for appellant]*